9 F.3d 110
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Brian K. RAISOR, Defendant-Appellant.
 No. 93-5264.
 United States Court of Appeals, Sixth Circuit.
 Oct. 27, 1993.
 
 Before: KEITH, GUY and BATCHELDER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant Brian K. Raisor ("Raisor") appeals his jury conviction for the manufacture of marijuana in violation of 21 U.S.C. Sec. 841(a)(1), and the use of a firearm during a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c)(1). For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 On June 25, 1992, Trooper Bruce Slack of the Kentucky State Police and a confidential informant visited Raisor's residence intending to purchase marijuana. Raisor resided in a mobile home in Smithfield, Kentucky. Slack testified that there were no steps to the front door of the mobile home and because the trailer was at least three feet off the ground, he proceeded to the back door to make contact with Raisor. Slack went up three to four steps to a porch leading to the back door. After knocking, he immediately noticed marijuana plants growing in styrofoam cups beside the house, on top of the air conditioning unit and on a stack of wood. After closer inspection of the marijuana plants, Slack left the residence and contacted Trooper Downey. Slack and Downey returned to the residence, photographed the marijuana plants, and took one of the styrofoam cups as a sample. Based on their observations, the troopers swore out an affidavit and obtained a warrant to search the residence of Raisor for various contraband and/or other evidence.
 
 
 3
 On June 26, 1992, at approximately 1:15 p.m., officers arrived to search Raisor's residence. Upon arrival, Agent Bowes checked to see if anyone was home. Finding no one home, Bowes entered the mobile home through a slightly open window. On entry, Bowes immediately detected a strong odor of marijuana and discovered grow lights[1] in a closet in the room. Bowes found marijuana residue beneath the grow lights. Bowes then left the room through a door which connected the room to the interior of the trailer. At that time an alarm sounded. Bowes proceeded to let the other officers inside the residence, and subsequently, they located and disarmed the alarm.
 
 
 4
 The search continued for two hours. While searching the mobile home, the officers discovered a small quantity of dried marijuana and marijuana seeds. No other contraband was found inside the residence, nor was any contraband found growing in the closet under the grow lights. The officers found approximately 128 marijuana plants outside the trailer. Additionally, the officers discovered a small scale, a "High Times Magazine" poster, several Polaroid photographs of growing marijuana and dried marijuana in the couch.
 
 
 5
 At the other end of the mobile home in the master bedroom, the officers discovered four loaded firearms lying on or propped against a nightstand. The firearms included a Ruger .22 caliber semi-automatic assault style rifle and three pistols (two semi-automatic pistols and a revolver).
 
 
 6
 After completing the search, the officers videotaped the contraband and waited for Raisor's return. Once Raisor returned, Bowes presented him with a list of the items seized and questioned him about the marijuana. Raisor admitted he grew and sold marijuana.
 
 
 7
 On July 16, 1992, Raisor was indicted and charged with violating Title 21 U.S.C. Sec. 841(a)(1), manufacturing and producing a Schedule I controlled substance (Count I), and Title 18 U.S.C. Sec. 924(c)(1), use of a firearm in relation to a drug trafficking offense (Count II). On September 23, 1992, the district court arraigned Raisor and scheduled a jury trial for November 19, 1992. On November 5, 1992, Raisor filed a motion to suppress the evidence discovered during the alleged illegal search. The district court scheduled the motion to be heard on November 16, 1992 and advanced the date of commencement of the trial to November 16, 1992.
 
 
 8
 On November 16, 1992, the district court heard and denied Raisor's motion to suppress the evidence, and thereafter, the trial commenced. On November 17, 1992, the jury found Raisor guilty on both counts. The district court sentenced Raisor to a special assessment of $100.00 and imprisonment of 92 months on Count I and to imprisonment of 60 months on Count II. The court ordered the 60 month term to be served consecutively to the 92 month term. This timely appeal followed.
 
 
 9
 On appeal, Raisor argues the district court erroneously denied his motion to suppress the evidence found in the trailer and his Rule 29 motion for judgment of acquittal for the charge of use of a firearm in relation to a drug trafficking offense. We discuss each allegation of error below.
 
 II.
 
 10
 Raisor argues that Slack's attempt to contact him by approaching the back door of the residence constituted an illegal search of the curtilage of Raisor's residence. According to Raisor, the search warrant, which is predicated on the officer's observations while he was on the back porch, is therefore invalidated by the illegal search and the evidence seized pursuant to the search warrant should be suppressed.
 
 
 11
 The district court's factual findings made in a motion to suppress are upheld unless clearly erroneous. United States v. Coleman, 628 F.2d 961, 963 (6th Cir.1980). The district court's conclusions of law, however, are reviewed de novo. Whitney v. Brown, 882 F.2d 1068, 1071 (6th Cir.1989).
 
 
 12
 During the suppression hearing, the district court acknowledged that the Fourth Amendment protects those areas that an individual holds as private and not open to the general public. Joint Appendix at 112, 124. The district court found Slack acted reasonably in approaching the back door of the house to make contact with the occupant. Id. The evidence, including a videotape of the search, indicated Raisor's mobile home did not have steps to the front door.
 
 
 13
 Although Raisor asserts that the air conditioning unit is part of the curtilage of the residence and protected by the Fourth Amendment, a review of the elements delineating the scope of the curtilage of a home reveals that this assertion is without merit. In United States v. Dunn, the Supreme Court held that questions concerning the curtilage of a residence should be resolved utilizing the following four factors: (1) the proximity of the area claimed to be the curtilage of the home; (2) the nature of the uses of the area; (3) the steps taken by the resident to protect the area from observations by passersby; and (4) whether the area is included within the enclosure surrounding the home. 480 U.S. 294, 301 (1987). A review of these factors indicates there was no reasonable expectation of privacy in the area in which the plants were discovered.
 
 
 14
 In the present case, the air conditioning unit and the pile of wood on which marijuana plants were found were directly adjacent to the home. The proximity of the area to the home, however, is not the determinative factor as to whether an area is contained within the curtilage of a home. United States v. Smith, 783 F.2d 648, 651 (6th Cir.1986). There were no markings or signs of enclosure indicating the owner's expectations of privacy. Furthermore, air conditioning units and wood piles typically do not lend themselves to uses which merit Fourth Amendment protection. Finally, this area was directly adjacent to the only reasonable means of access to the mobile home. These factual findings, viewed in a light most favorable to the government, are not clearly erroneous. Reviewing these facts in totality, the district court properly denied Raisor's motion to suppress the evidence.
 
 B.
 
 15
 Raisor also asserts the government produced insufficient evidence to support a conviction under 18 U.S.C. Sec. 924(c)(1) for the use of a firearm in relation to a drug trafficking offense, and therefore, the district court erred as matter of law in denying Raisor's Rule 29 motion for judgment of acquittal. Raisor urges that the mere presence of weapons in close vicinity to drug trafficking does not constitute use in relation to a drug trafficking offense.
 
 
 16
 This Court reviews a denial of a motion for a judgment of acquittal de novo. The Court must determine, viewing the evidence in a light most favorable to the government, whether any rational trier of fact could have found the elements of the crime charged beyond a reasonable doubt. United States v. Montgomery, 980 F.2d 388, 393 (6th Cir.1992), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979). "No credibility determination can be made. Provided that sufficient evidence exists for a rational trier of fact to reach the actual verdict, the court must affirm." United States v. White, 985 F.2d 271, 274 (6th Cir.1993).
 
 
 17
 Title 18 U.S.C. Sec. 924(c)(1) provides: "Whoever, during and in relation to any crime of violence or drug trafficking crime, ... uses or carries a firearm, shall ... be sentenced to imprisonment for five years.... This Court has recognized that mere possession is insufficient to prove a violation of 18 U.S.C. Sec. 924(c)(1)." United States v. Morrow, 977 F.2d 222, 226 (6th Cir.1992). The government must prove that "the firearm had some relation to or connection with the underlying offense. Id. For cases where weapons are found on the premises under the control of a drug offender, the courts have developed a "fortress analogy" theory. United States v. Henry, 878 F.2d 937, 944 (6th Cir.1989). The "fortress analogy" theory holds that "if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect drugs or otherwise facilitate a drug transaction, then such firearms are used 'during and in relation to' a drug trafficking crime." Id. at 944 (citations omitted).
 
 
 18
 This Court has also approved the Eighth and Ninth Circuits' description of the necessary nexus between the firearm and the underlying offense. The Eighth Circuit does not require that the weapon be brandished or discharged. The nexus is satisfied if the firearm may be considered an integral part of the undertaking and if its availability increases the likelihood of success. United States v. Matra, 841 F.2d 837, 843 (8th Cir.1988). Similarly, the Ninth Circuit held that where a firearm is in the possession or control of an individual guilty of an underlying criminal offense, a violation of 18 U.S.C. Sec. 924(c)(1) occurs if the facts show that the firearm facilitated or had a part in the crime. Morrow, 977 F.2d at 231.
 
 
 19
 In the present case, a search of Raisor's home revealed four loaded weapons, bags of marijuana, marijuana grow lights, and drug paraphernalia including magazines about marijuana. Outside the residence, the officers recovered 128 marijuana plants growing in styrofoam cups and plant containers. A search of Raisor's car revealed a set of measuring scales and marijuana rolling papers.
 
 
 20
 Troopers discovered four loaded weapons in the master bedroom. A loaded Ruger .22 caliber semi-automatic assault style rifle was propped against the nightstand next to the bed and three loaded handguns, two semi-automatic pistols and a revolver, were on top of the nightstand.
 
 
 21
 Raisor argues that because the weapons were not found in close proximity to the drugs they cannot be found to have been used in relation to a drug trafficking offense. He urges that his case is factually distinct from that of Henry, in which the weapons were found beside a large amount of cash and the actual drugs, and various alarms were set to warn off intruders. In the present case, Raisor argues that it is relevant that the weapons were inside the house and the marijuana outside the house. In addition, only one alarm was attached to the guest room which did not contain any drugs. The record, however, indicates that marijuana grow lights as well as marijuana residue were found in the guest room of the residence. The weapons were located in an area that allowed Raisor to easily access them. Although there was only one alarm in the mobile home, it is significant that the alarm was connected to a room in which marijuana plants could be grown as well as where marijuana residue was found. The alarm was designed to alert Raisor to any danger posed to his drugs. The weapons, easily accessible, arguably increased the likelihood of success for drug sales while providing protection.
 
 
 22
 Viewing the evidence in a light most favorable to the government, a rational trier of fact could have found that the weapons found inside of the residence increased the likelihood of success of drug trafficking at this residence. The district court, therefore, did not err in denying Raisor's Rule 29 motion for judgment of acquittal.
 
 III.
 
 23
 For the foregoing reasons, we affirm the denial of Raisor's motion to suppress the evidence and Rule 29 motion for judgment of acquittal by the Honorable Joseph M. Hood, United States District Court Judge for the Eastern District of Kentucky.
 
 
 
 [1]
 Grow lights are used to nurture and grow marijuana plants